

**SIGNED this 02nd day of March, 2012.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE

_____

# United States Bankruptcy Court
### Western District of Texas
### San Antonio Division

| IN RE: | BANKR. CASE NO. |
|---|---|
| THOMAS B. SANDERS & SARAH A. SANDERS | 11-51240 |
| *DEBTORS* | CHAPTER 7 |

### DECISION ON MOTION FOR CONTEMPT

On August 10, 2011, the captioned Debtors filed a motion for contempt against Ford Motor Credit Company ("FMC") after FMC repossessed one of the Debtors' vehicles post-discharge, despite the fact that the Debtors had always been (prior to and throughout the course of their Chapter 13 bankruptcy) current in their car payments. FMC repossessed the vehicle pursuant to an *ipso facto* clause in the Debtors' contract.

The Debtors filed for Chapter 13 on April 4, 2011. At that time, they said (in their Statement of Intention) that they intended to reaffirm their debt with FMC. The Debtors (and the

1

Debtors' attorney) signed and filed a reaffirmation agreement with FMC on June 28, 2011. The court did not set the reaffirmation for a hearing, indicating that the court did not perceive that the agreement posed an undue hardship on the Debtors. The following day, June 29, 2011, the Debtors rescinded the reaffirmation agreement, as is their right under section 524(c). The Debtors received their discharge on July 20, 2011. On August 7, 2011, FMC repossessed the Debtors' vehicle—a 2006 Ford Expedition. The Debtors were not (and indeed never had been) behind on their car payments. For this, the Debtors seek to hold FMC in contempt. Essentially, the Debtors' position is that they should have been permitted to "pay and drive" post-discharge as long as they remained current on the debt.[1]

FMC responded to the Debtors' contempt motion by arguing that the Debtors' rescission of the reaffirmation agreement meant that the stay terminated with respect to the vehicle pursuant to sections 521(a)(2) and 362(h) of the Code, and that FMC was thus free to enforce the *ipso facto* clause of the Debtors' contract pursuant to section 521(d) and to repossess the vehicle.[2]

*Discussion*

Section 521(a)(2) of the Code provides that the debtor shall:

(2) if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate--

---

[1] Had the Debtors not filed a statement of intention and reaffirmation agreement pursuant to section 521(a)(2), they would not have been permitted to exercise this (non-statutory) "ride through" option. The Fifth Circuit rejected this option well prior to the enactment of the "mandatory reaffirmation" provision in BAPCPA. *See Johnson v. Sun Fin. Co. (In re Johnson)*, 89 F.3d 249, 252 (5th Cir. La. 1996) ("This court adopts the reasoning of the Eleventh Circuit in *Taylor*, and holds that the debtors are limited to the three options set forth in [section 521(a)(2)]."). Post-BAPCPA, courts have found that sections 521(a)(6) and 362(h), which were added by BAPCPA, "clearly eliminated the 'ride through' for personal property." *Habersham Bank v. Harris (In re Harris)*, 421 B.R. 597, 599 (Bankr. S.D. Ga. 2010). *See also Daimler Chrysler Fin. Servs. Am., LLC v. Jones (In re Jones)*, 591 F.3d 308, 311 (4th Cir. 2010) ("Sections 521(a)(2)(C) and 362(h) significantly alter the pre-BAPCPA analysis by explicitly requiring a debtor to indicate on the statement of intention an intent to either (1) redeem the property or (2) reaffirm the debt, in order to retain the property. If the debtor fails to so indicate, the stay terminates with respect to the property, and the property will no longer be part of the estate. Section 521(a)(6), added by BAPCPA, also evidences that the ride-through option has been eliminated.");

[2] FMC also cites section 521(a)(6) as authority for FMC's repossession of the vehicle. Section 521(a)(6) provides that an individual Chapter 7 debtor may not "retain possession of personal property as to which a creditor has an *allowed claim for the purchase price*" unless the debtor complies with the remaining requirements of section 521. 11 U.S.C. § 521(a)(6). Here, FMC never filed a claim, and thus does not have an "allowed claim for the purchase price." Section 521(a)(6) does not apply here. *See, e.g., In re Miller*, 443 B.R. 54, 57 (Bankr. D. Del. 2011) ("Application of section 521(a)(6) is predicated upon a creditor possessing an 'allowed claim for the purchase price secured in whole or in part by an interest' in the collateral. It is clear from the express language of section 521(a)(6) that the applicability of section 521(a)(6) requires a creditor to possess an 'allowed claim.' If Congress had intended section 521(a)(6) to apply to any legitimate purchase-money secured claim, even if no proof of claim is filed, it would not have used the phrase 'allowed claim,' but rather, simply 'claim.'"); *In re McMullen*, 443 B.R. 67, 74 (Bankr. E.D.N.C. 2010) (reaching same conclusion).

> (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property; *and*
>
> (B) within 30 days after the first date set for the meeting of creditors under section 341(a) of this title or within such additional time as the court, for cause, within such 30-day period fixes, perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; *except that* nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h) of this title[.]

11 U.S.C. § 521(a)(2). Thus, a Chapter 7 debtor must file a statement of intention with respect to debts secured by property of the estate, and then must perform that intention within the time period specified in section 521.

Section 362(h)(1) provides:

> (1) In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)--
>
> > (A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and
> >
> > (B) to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the

3

>original contract terms and the creditor refuses to agree to the reaffirmation on such terms.

11 U.S.C. § 362(h)(1). In short, "under 11 U.S.C. § 362(h), in order for the debtor to avoid relief from the stay and abandonment with respect to personal property without electing either to surrender or redeem such property, the debtor must: (i) timely file a statement of intention indicating an intent to reaffirm the debt; and (ii) timely take the action to reaffirm the debt (unless the debtor is willing, but the creditor refuses to agree to an agreement under the original contract terms)." *In re Perez*, 2010 Bankr. LEXIS 2229, at *38-39 (Bankr. D.N.M. July 12, 2010).

>Finally, section 521(d) provides:
>
>If the debtor fails timely to take the action specified in subsection (a)(6) of this section, or in paragraphs (1) and (2) of section 362(h) of this title, with respect to property … as to which a creditor holds a security interest not otherwise voidable under section 522(f), 544, 545, 547, 548, or 549 of this title, nothing in this title shall prevent or limit the operation of a provision in the underlying lease or agreement which has the effect of placing the debtor in default under such lease or agreement by reason of the occurrence, pendency, or existence of a proceeding under this title or the insolvency of the debtor. Nothing in this subsection shall be deemed to justify limiting such a provision in any other circumstance.

11 U.S.C. § 521(d). "In other words, if a debtor fails to comply with whichever automatic-stay-termination regime applies [section 521(a)(6) or section 362(a)], the automatic stay is terminated, and any *ipso facto* clause in the contract and lien becomes enforceable. The creditor would then be able to seek relief against the debtor in state court under state law, including (1) seeking to repossess the encumbered personal property and (2) seeking to obtain a deficiency judgment against the debtor *in personam*." *Coastal Fed. Credit Union v. Hardiman*, 398 B.R. 161, 175-176 (E.D.N.C. 2008); *see also In re Ebbrecht*, 451 B.R. 241, 246 (Bankr. E.D.N.Y. 2011) (noting that "'[s]ection 521(d) provides that if a debtor fails to timely take the actions required by §§ 521(a)(6) (regarding a debt secured by an allowed claim for the purchase price of personalty) or 362(h)(1) or (2) (regarding inter alia, the debtor's requirement to file and perform a statement of intention pursuant to section 365(p) with respect to an unexpired lease of personal property) any limitations on ipso facto clauses under the Bankruptcy Code are not in effect.'") (citation omitted); *In re Perez*, 2010 Bankr. LEXIS 2229, at *36-37 (Bankr. D.N.M. July 12, 2010) ("Under 11 U.S.C. § 521(d), if a debtor fails to take the action specified in 11 U.S.C. § 521(a)(6) or in 11 U.S.C. § 362(h), and the creditor holds a nonvoidable lien against the property, the creditor may enforce an ipso facto clause to the extent enforceable under nonbankruptcy law, and declare a default based on the debtor's insolvency or the commencement of debtor's bankruptcy

4

case even if the loan is current, the vehicle is insured and the debtor is not otherwise in default.").

The bankruptcy court for the District of Oregon succinctly summarized the above-described statutory sections as follows:

> To summarize the changes made by BAPCPA, as applicable to the present situation: (1) A debtor must timely file a Statement of Intention and must indicate on that form whether the debtor will surrender the collateral or, if the intent is to maintain possession, to redeem the collateral or enter into a reaffirmation agreement; (2) if the intent is to redeem the collateral or enter into a reaffirmation agreement, the required action must occur within 45 days of the meeting of creditors under Code § 341(a). Failure to take the required actions causes the following to occur: (1) the automatic stay is terminated, (2) the property is no longer property of the estate, and (3) the creditor may take whatever actions respecting the property as are allowed under nonbankruptcy law, including the use of a contractual provision providing for default upon the filing of bankruptcy, commonly known as an ipso facto clause."

*In re Bower*, 2007 Bankr. LEXIS 2580, 5-6 (Bankr. D. Or. July 26, 2007). *See also In re Perez*, 2010 Bankr. LEXIS 2229, 23-24 (Bankr. D.N.M. July 12, 2010) ("Section 521(a)(2) specifies duties a debtor must satisfy if a debtor wishes to reaffirm a debt. Sections 362(h) and 521(a)(6) provide for stay relief in favor of the creditor if the debtor wishing to reaffirm a debt does not satisfy certain requirements specified in those sections. Section 521(d) provides that an ipso facto clause is enforceable if a debtor wishing to reaffirm a debt does not satisfy certain requirements under §§ 362(h) and 521(a)(6).").

The final section relevant to the issue presented here is section 524(c)(4). That section provides:

> (c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—
>
> \*\*\*
>
> (4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim[.]

5

11 U.S.C. § 524(c)(4). This section gives a debtor the right to rescind a reaffirmation either prior to discharge or within 60 days of filing the reaffirmation agreement, whichever is later.

The issue presented by the Debtors' motion for contempt is whether a debtor who rescinds a reaffirmation agreement within the time provided for rescission (and prior to discharge) may nonetheless benefit from the protections of the automatic stay pursuant to section 362(h) (and thereby prevent a creditor from enforcing an *ipso facto* clause) because the debtor technically complied with the statement of intention and performance requirements of section 521(a)(2).

The court has found no case law directly on point. However, for the reasons discussed below, the court finds that a plain reading of the relevant sections of the Code leads to the conclusion that FMC acted within its rights when it repossessed the Debtors' vehicle post-discharge pursuant to the *ipso facto* clause of the Debtors' contract.

The best way to read section 524(c) together with section 362(h) is that an "agreement of the kind specified in § 524(c)," *see* § 362(h)(1), is an agreement of the kind contemplated by section 362(h) only if none of the "unless" clauses of section 524(c) is triggered—i.e. the debtor has not rescinded the agreement. The argument thus goes that if the debtor rescinds, then no agreement of the kind specified in section 524(c) was entered into. *See Kupersmith v. Weitz*, No. 14-05-00167-CV, 2006 Tex. App. LEXIS 10136, at *13-14 (Tex. App.—Houston [14th Dist] 2006, no writ.) (defining rescission as "a party's unilateral unmaking of a contract for legally sufficient reason…"); *Munoz v. Witt*, No. 10-07-00010-CV, 2008 Tex. App. LEXIS 7296, at *3 (Tex. App.—Waco [10th Dis.] 2008, no writ.) ("[U]pon rescission of a contract, the parties are restored to their former position—the *status quo ante*."). If no agreement was entered into, then, under section 362(h), the stay terminates and section 521(d) applies. *See Dumont v. Ford Motor Credit Co. (In re Dumont)*, 383 B.R. 481, 489-90 (B.A.P. 9th Cir. 2008) (concluding that creditor who repossessed debtor's car post-discharge, despite debtor remaining current in her payments, had the right to do so pursuant to *ipso facto* clause because debtor had failed to indicate in her statement of intention an intent to either reaffirm or redeem).

A wrinkle arises here in that FMC did not act on its section 362(h) remedy pre-discharge. Rather, FMC waited until after the Debtors' discharge had been entered to repossess the vehicle. The Bankruptcy Code does not address anything other than the rights and remedies available to creditors *under the Code* in the event a reaffirmation agreement is not made (or, as the case may be, unmade). Section 362(h) thus only applies pre-discharge, while a bankruptcy case still exists. There is no automatic stay post-discharge. Section 362(h) is a bankruptcy-related remedy; it does not survive the bankruptcy. However, for so long as the debtor is still *in* bankruptcy (*i.e.*, for so long as the debtor has not received a discharge), the remedial section is operative. Thus, if the debtor reaffirms a car loan debt of the type under discussion here, but rescinds that agreement

*prior* to discharge, then it can be said that the contract has been "unmade," triggering section 362(h). That FMC failed to act pursuant to the rights granted by section 362(h)—i.e. failed to act *during the Debtors' bankruptcy case*—should not change the outcome, however.

Section 521(d) specifically states that,

[i]f the debtor fails timely to take the action specified in … paragraphs (1) and (2) of section 362(h) [which includes the requirement that the debtor "either redeem [or] enter into an agreement of the kind specified in section 524(c)"—i.e. an agreement that has not been rescinded], with respect to property … as to which a creditor holds a security interest … nothing in this title shall prevent or limit the operation of a provision in the underlying … agreement by reason of the occurrence, pendency, or existence of a proceeding under this title or the insolvency of the debtor. *Nothing in this subsection shall be deemed to justify limiting such a provision in any other circumstance.*

11 U.S.C. § 521(d). It is this last sentence that dictates the result here. While the remedy of section 362(h) might not apply post-discharge, the Debtors' failure to enter into "an agreement of the kind specified in section 524(c)" nonetheless had the same effect as if the stay had been lifted. Under section 521(d), the *ipso facto* clause essentially sprang back into effect, entitling FMC (in the absence of a new agreement) to repossess the vehicle.

Accordingly, the court will not hold FMC in contempt—although the court remains confused as to why FMC would want to repossess the vehicle in this situation considering the Debtors have always been current in their payments.

A separate order consistent with this decision will be entered.

7